Howard J. Steinberg (SBN 89291)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel.: (310) 586-7702
Fax: (310) 586-0204
Email: steinbergh@gtlaw.com

Attorneys for Petitioning Creditors
Warren Havens and Polaris PNT PBC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>LEONG PARTNERSHIP,<br><br>                Debtor. | Case No.: 16-42363<br><br>Chapter 11<br><br>**OPPOSITION OF PETITIONING CREDITORS TO MOTION BY ARNOLD LEONG FOR JUDGMENT AGAINST PETITIONERS FOR ATTORNEYS' FEES AND COSTS PURSUANT TO BANKRUPTCY CODE SECTION 303(i)**<br><br><u>Hearing</u>:<br>Date: April 17, 2017<br>Time: 10:00 a.m.<br>Place: Courtroom 220<br>        1300 Clay Street<br>        Oakland, CA 94612 |

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | DR. LEONG IS PRECLUDED FROM RECOVERING HIS FEES AND COSTS | 1 |
| | A. Statutory Basis for Recovery of Fees and Costs | 1 |
| | B. Recovery of Fees and Costs Under §303(i)(1) is Limited to the Alleged Debtor | 2 |
| | C. Dr. Leong Is Foreclosed From Contending that He Is the Alleged Debtor | 4 |
| | D. It is Impermissible to Rely on §105 or Equitable Grounds to Allow a Fee Recovery | 6 |
| | E. Dr. Leong Had No Need To Defend the Involuntary Petition | 6 |
| III. | THE REQUESTED FEES SHOULD BE GREATLY REDUCED IN AMOUNT | 8 |
| IV. | THE COST REQUEST SHOULD BE DENIED | 12 |
| V. | CONCLUSION | 14 |

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Alyeska Pipeline Service Co. v. Wilderness Society,
    421 U.S. 240, 95 S.Ct. 1612 (1975) ...................................................................................6

American Title Insurance Co. v. Lacelaw Corp.,
    861 F.2d 224 (9th Cir. 1988) ...........................................................................................5

In re Atlas Machinery and Iron Works, Inc.,
    190 B.R. 796 (Bankr. E.D. Va. 1995) ..............................................................................8

Bank of Nova Scotia v. Bass,
    2017 WL 874702 (D.V.I. Mar. 3, 2017) ..........................................................................7

Blum v. Stenson,
    465 U.S. 886, 104 S. Ct. 1541 (1984) .............................................................................8

In re Breeden,
    180 B.R. 802 ..................................................................................................................11

Budget Service Co. v. Better Homes of Virginia, Inc.,
    804 F.2d 289 (4th Cir. 1986) ...........................................................................................3

In re Chateaugay Corp.,
    920 F.2d at 185 ................................................................................................................4

Crawford Fitting Co. v. J. T. Gibbons, Inc.,
    482 U.S. 437, 107 S. Ct. 2494 (1987) ...........................................................................13

Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.,
    2003 WL 24162614 (D. Or. May 5, 2003)
    vacated on other grounds, 99 F. App'x 911 (Fed. Cir. 2004) ......................................13

In re Goodman,
    991 F.2d 613 (9th Cir. 1993) ...........................................................................................3

Hamilton v. State Farm Fire & Casualty Co.,
    279 F.3d 778 (9th Cir. 2001) ...........................................................................................5

Hawkeye Sec. Ins. Co. v. Porter,
    95 F.R.D. 417 (N.D. Ind. 1982) ......................................................................................7

Hensley v. Eckerhart,
    461 U.S. 424, 103 S. Ct. 1933 (1983) .............................................................................8

Law v. Siegel,
    134 S.Ct. 1188 (2014) ................................................................................................................6

In re Leonard Jed Co.,
    103 B.R. 706 (Bankr. D. Md. 1989) ........................................................................................11

In re Miles,
    430 F.3d 1083 (9th Cir. 2005) ........................................................................................2, 3, 4, 6

In re Powerine Oil Co.,
    71 B.R. 767 (B.A.P. 9th Cir. 1986) ...........................................................................................8

Rowland v. California Men's Colony,
    – U.S. ___, 113 S.Ct. 716, 121 L.Ed. 2d 656 (1993) .................................................................4

In re Smart World Technologies, LLC,
    423 F.3d 166 (2d Cir. 2005) ......................................................................................................6

In re Stroh,
    34 Fed. Appx. 562 (9th Cir. 2002) ............................................................................................5

Valdivia v. Brown,
    848 F. Supp. 2d 1141 (E.D. Cal. 2011) .....................................................................................8

In re VII Holdings Co.,
    362 B.R. 663 (Bankr. D. Del. 2007) ..........................................................................................3

In re Worldwide Direct, Inc.,
    316 B.R. 637 ...........................................................................................................................11

**Federal Statutes**

28 U.S.C.
    § 1920 ............................................................................................................................1, 12, 13

Bankruptcy Code
    § 303(i) ..................................................................................................................................1, 4

Federal Rule of Bankruptcy Procedure 7054(b) ..............................................................................12

Petitioning Creditors Warren Havens and Polaris PNT PBC ("Petitioners") hereby file their Opposition to the Motion by Arnold Leong for Judgment Against Petitioners for Attorneys' Fees and Costs Pursuant to Bankruptcy Code Section 303(i) [Docket No. 104] (the "Fee Motion") filed by Dr. Arnold Leong ("Dr. Leong"), which is accompanied by the (1) Declaration of Jeremy Richards of the firm Pachulski Stang Ziehl & Jones LLP ("Pachulski"); (2) Declaration of Richard W. Osman of the firm Bertrand, Fox, Elliott, Osman & Wenzel ("Bertrand"); and (3) Declaration of Paul F. Kirsch of the firm Shopoff Cavallo & Kirsch LLC ("Shopoff").

## I. INTRODUCTION

Dr. Leong seeks attorneys' fee and costs of $300,358.48 as a consequence of the dismissal of the involuntary bankruptcy petition filed against the Leong Partnership. Section 303(i)(1) makes clear that only the alleged debtor can recover its attorneys' fees and costs. Dr. Leong has steadfastly maintained during the course of these proceedings that the alleged debtor, Leong Partnership, does not exist and that he is not a general partner of this allegedly non-existent entity. As such, Dr. Leong is not the alleged debtor and his claim for fees and costs must be denied.

In the event fees are recoverable, they should be significantly reduced because the time entries of the three law firms referenced above, only one of which was counsel of record for Dr. Leong in these proceedings, are in many instances grossly excessive and fail to provide adequate information concerning the tasks that were performed. Dr. Leong also seeks to recover costs, all, or virtually all of which are not allowable pursuant to 28 U.S.C. § 1920.

## II. DR. LEONG IS PRECLUDED FROM RECOVERING HIS FEES AND COSTS

### A. Statutory Basis for Recovery of Fees and Costs

Dr. Leong seeks to recover fees and costs under §303(i)(1), which provides:

> (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment –
>
> (1) against the petitioners *and in favor of the debtor* for –
>
> (A) costs; or
>
> (B) a reasonable attorneys' fee; (emphasis added)

1

At issue is whether under the circumstances of this case Dr. Leong is entitled to recover his fees and costs under §303(i)(1) notwithstanding the fact that he is not the alleged debtor.

**B.     Recovery of Fees and Costs Under §303(i)(1) is Limited to the Alleged Debtor**

Section 303(i)(1) limits the recovery of fees and costs to the alleged debtor. In <u>In re Miles</u>, 430 F.3d 1083 (9th Cir. 2005) ("*Miles*"), the Ninth Circuit addressed whether damages could be awarded under §303(i)(2) to anyone other than the alleged debtor. In contrast to § 303(i)(1), which provides that the court may grant a judgment "in favor of the debtor", (i)(2) provides that the court may grant judgment:

> (2) against any petitioner that filed the petition in bad faith, for –
>
> (A)   any damages proximately caused by such filing; or
>
> (B)   punitive damages.

After examining the statute, the court concluded that damages under § 303(i)(2) could only be awarded to a debtor. In framing the issue, the court noted:

> The statute is ambiguous as to whether damages under §303(i) can be awarded only in favor of the debtor or in favor of other parties. One possible reading is that by mentioning only the debtor and the petitioning creditors in §303(i)(1), Congress intended to limit standing to the debtor. Another possible reading, however, is that by omitting the words "and in favor of the debtor" included in §303(i)(1) from § 303(i)(2), Congress intended persons other than the debtor to have standing to recover damages for bad faith filings of involuntary petitions. Because the language is ambiguous, we consider legislative history, relevant case law, and public policy to resolve the question. See <u>Barstow v. IRS (In re Bankr Estate of MarkAir, Inc.</u>), 308 F.3d 1038, 1043-48 (9th Cir. 2002) (considering legislative history, relevant cases, and public policy consideration in interpreting 11 U.S.C. § 724((b)).

In holding that recoveries were limited to the alleged debtor, the court in *Miles* said:

> The possible abuse of the involuntary bankruptcy process that could result makes it unlikely that Congress intended to permit third parties to seek damages under § 303(i)(2), as it took great care to build into the Code provisions that would prevent abuse of the process.
>
> Finally, reading § 303(i) to limit standing to the debtor is consistent with the admittedly rather sparse authority addressing this issue. See id. at 755 (holding that § 303(i)(2) "does not give standing to third parties to recover damages from a bad-faith involuntary petitioner"); In re Ed Jansens's Patio, Inc., 183 B.R. 643, 644 (Bankr. M.D. Fla. 1995) ("Even a cursory reading of the statute reveals that the relief set forth in § 303(i) is available only to the debtor").

Notably, the court in *Miles* held that a claim for damages under § 303(i)(2) could only be asserted by the debtor even though the statute does not expressly state "in favor of the debtor." Section 303(i)(1) *does* expressly state that fees and costs can only be entered "in favor of the debtor", so there can be no doubt that no one other than the debtor is entitled to a remedy under this section. See, In re VII Holdings Co., 362 B.R. 663, 667 (Bankr. D. Del. 2007) ("The plain language section 303(i)(1) is clear – only a debtor may recover attorneys' fees and costs under subsection (1).").

This narrow construction of the statutory remedy is consistent with the Ninth Circuit's approach to other sections of the Bankruptcy Code where a remedy is afforded to a debtor for wrongful conduct by a creditor. For example, under §362(k)(1), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees…" The word "individual" is not defined in the Bankruptcy Code, and the Ninth Circuit has addressed whether entities such as corporations and partnerships fall under this term. Other circuits have held that they can, noting that a narrow construction would defeat much of the purpose of the section. See, e.g., Budget Service Co. v. Better Homes of Virginia, Inc., 804 F.2d 289, 292 (4th Cir. 1986). In rejecting this approach, the Ninth Circuit held in In re Goodman, 991 F.2d 613, 619 (9th Cir. 1993), that the term

3

OPPOSITION OF PETITIONING CREDITORS TO MOTION FOR JUDGMENT FOR ATTORNEYS' FEES
LA 133008106v2

Case: 16-42363   Doc# 128   Filed: 04/03/17   Entered: 04/03/17 19:35:07   Page 7 of 18

"individual" was limited to individuals and did not include a corporation or other artificial entity. In so ruling, the court observed:

> The Fourth and Third Circuit's analysis is inconsistent with the principals of statutory construction set forth by the Supreme Court in <u>Ron Pair</u>. <u>Chateaugay, Prairie Truck</u>, and <u>MCEG Productions</u> set forth a persuasive analysis of the issue, which is consistent with <u>Ron Pair</u>. The Second Circuit's reasoning, which we adopt, is as follows:
>
>> We have not located any legislative history to suggest that § 362(h) was meant to apply to "persons," rather than being confined to "individuals." The section was added as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98-353, 98 Stat. 333, 352, 1984 U.S. Code Cong. & Admin. News (98 Stat) 333, 352 (1984). There is no published legislative history suggesting the possibility of a drafting error or other inadvertence. Appellee conceded during oral argument that there is no legislative history showing that the section was meant to apply to "persons." Therefore, this is not one of those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters. <u>Ron Pair Enterprises, Inc.</u>, 489 U.S. at 242, 109 S.Ct. at 1031 (brackets in original).
>
> <u>In re Chateaugay Corp.</u>, 920 F.2d at 185; cf. <u>Rowland v. California Men's Colony,</u> – U.S. ___, ___, 113 S.Ct. 716, 726, 121 L.Ed. 2d 656 (1993) (holding the word "individuals" is not the equivalent of the Dictionary Act's use of the word "persons").

As the Ninth Circuit noted in *Miles*, there is likewise no legislative history with respect to § 303(i) that supports the notion that anyone other than the alleged debtor is entitled to a remedy under that section.

### C. Dr. Leong Is Foreclosed From Contending that He Is the Alleged Debtor

Throughout these proceedings, Dr. Leong has contended that the Leong Partnership does not exist and that he is not a general partner of the Leong Partnership. For example:

4

1. In the Motion of Dr. Arnold Leong to Dismiss Involuntary Petition ("Motion") [Docket No. 24], he says "Leong is unaware of the existence of any such legal entity." (Motion, p. 4, n.2)

2. In the Application for an Order Shortening Time for hearing on the Motion ("Application") [Docket No. 15], Dr. Leong likewise states: "there is no such legal entity as the 'Leong Partnership;'" (Application, p. 2, n. 2)

3. In the Reply to Petitioning Creditors' Opposition to the Motion ("Reply") [Docket No. 36], he refers to the "non-existent Putative Alleged Debtor." (Reply, p. 7, 1.18)

4. In the Answer of Dr. Arnold Leong, Alleged General Partner ("Answer") [Docket No. 48], he denies: the alleged debtor's name (Answer ¶2); that it is a partnership (Answer ¶4); that there is a partnership entity named the 'Leong Partnership'…and says "no such partnership or conspiracy exists or has ever existed" (Answer ¶10); and denies that he was a partner (Answer ¶11)

5. In the Declaration of Dr. Arnold Leong in Support of Motion for Summary Judgment [Docket No. 63-2] ("Decl."), he denies that he is a general partner of the Leong Partnership, and says he has never heard of it (Dec. ¶16); and says he was never a partner of the other alleged general partners of the Leong Partnership. (Dec. ¶17)

The aforementioned statements by Dr. Leong are judicial admissions. American Title Insurance Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.") In light of these admissions, Dr. Leong cannot claim that he is the alleged debtor or the general partner of the alleged debtor. Given that these statements formed the basis for this Court granting summary judgment, he is also judicially estopped from taking this position. Hamilton v. State Farm Fire & Casualty Co., 279 F.3d 778, 782 (9th Cir. 2001); In re Stroh, 34 Fed. Appx. 562 (9th Cir. 2002) (debtor who claimed in prior bankruptcy case that he held no partnership interest judicially estopped from claiming partnership interest in subsequent bankruptcy case).

### D. It is Impermissible to Rely on §105 or Equitable Grounds to Allow a Fee Recovery

While *Miles* forecloses Dr. Leong from recovering fees under § 303(i)(1), he cannot rely on § 105 or equitable grounds as a basis for this Court to override the statute. As noted in In re Smart World Technologies, LLC, 423 F.3d 166, 184 (2d Cir. 2005):

> This Court has long recognized that Section 105(a) limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code. It does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to de equity.

Under far more egregious circumstances than the present case, the Supreme Court ruled that a bankruptcy court cannot override statutory provisions to reach an equitable result so that attorneys' fees could be paid. In Law v. Siegel, 134 S.Ct. 1188, 1197-98 (2014), the debtor perpetrated a fraud, submitted false evidence, and the trustee spent over $500,000 to defeat claims of false liens. As a consequence, the bankruptcy court surcharged the debtor's $75,000 homestead exemption to defray the trustee's attorneys' fees. In holding that the bankruptcy court overstepped its authority, the Court observed that "in exercising statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions."

In this proceeding, the Court concluded that the claims of the Petitioners were disputed, not fraudulent. Dr. Leong cannot act on behalf of a partnership that does not exist, nor can he be deemed to be the general partner of a non-existent partnership. He has conclusively admitted he was not acting in such a capacity. This Court cannot, under the guise of equity, convert Dr. Leong into the legal equivalent of an alleged debtor. Under the American rule, attorney's fees are not allowed to the prevailing party in the absence of a statute or contractual provision authorizing such an award. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616 (1975). That rule should not be altered in this proceeding.

### E. Dr. Leong Had No Need To Defend the Involuntary Petition

If, as Dr. Leong contends, the Leong Partnership was a non-existent entity, there was no need for him to defend the involuntary petition. Where a suit is commenced against a non-existent legal

entity, any judgment entered against it is void and of no effect. Bank of Nova Scotia v. Bass, 2017 WL 874702, at *3 (D.V.I. Mar. 3, 2017):

> It is well-settled that a purported judgment against something that does not legally exist is void. *See* Google, Inc. v. Cent. Mfg. Inc., 316 Fed.Appx. 491, 495 (7th Cir. 2008) ("Instead Google sued what the bankruptcy court had already found were names, not legal entities, which normally renders a suit void *ab initio*."); Buzard v. Helvering, 77 F.2d 391, 393 (D.C. Cir. 1935) (explaining that "the effect of the dissolution of a corporation is to terminate its existence as a legal entity, and render it incapable of suing or being sued as a corporate body or in its corporate name," thus "any judgment attempted to be given against it is void"); Vitek v. AIG Life Brokerage, No. 2:06-CV-0615, 2007 WL 682431, at *4 (S.D. Ohio Feb. 27, 2007) ("It is well-established that both a plaintiff and a defendant in a lawsuit must be legal entities with the capacity to be sued. If a defendant in a lawsuit is not an actual or legal entity, then any judgment rendered against that entity is void." (citations omitted)); Banakus v. United Aircraft Corp., 290 F. Supp. 259, 260 (S.D.N.Y. 1968) ("Since Holochuck was dead when the action for personal injuries was commenced, that action must be treated as a nullity...."); Chorney v. Callahan, 135 F. Supp. 35, 36 (D. Mass. 1955) ("As originally filed, this action was brought against a named defendant who was already dead. At that point the purported action was a nullity, for a dead man obviously cannot be named party defendant in an action.")

*See also,* Hawkeye Sec. Ins. Co. v. Porter, 95 F.R.D. 417, 419 (N.D. Ind. 1982) (judgment against a non-entity is void judgment and a legal nullity). Thus, had Dr. Leong chosen not to contest the involuntary petition, an order for relief would have been of no force and effect if entered if the Leong Partnership does not exist. The fact that Dr. Leong chose to litigate this issue does not entitle him to fees under § 303(i)(1).

## III. THE REQUESTED FEES SHOULD BE GREATLY REDUCED IN AMOUNT

While the request for fees should be denied, if the Court is inclined to allow fees, the amount awarded should be significantly less than the amount requested. When seeking to recover attorneys' fees under §303(i)(1), the log of the attorney services should comport with the requirements of §330. In re Atlas Machinery and Iron Works, Inc., 190 B.R. 796, 803 (Bankr. E.D. Va. 1995). Section 303(i)(1)(B) allows for the recovery of "reasonable attorney's fees." Likewise, § 330(a)(1)(A) restricts the compensation of counsel to a debtor in possession to "reasonable compensation for actual, necessary services rendered[.]"

The Supreme Court applies a two-pronged approach to determine the "reasonableness" of a request for attorneys' fees. First, a court must calculate a lodestar figure by multiplying the number of hours reasonably expended on the litigation multiplied by an hourly rate, which is then subject to upward or downward adjustment. See Blum v. Stenson, 465 U.S. 886, 897-900, 104 S. Ct. 1541, 1548-1550 (1984); In re Powerine Oil Co., 71 B.R. 767, 772 (B.A.P. 9th Cir. 1986) (citing Blum). At all times, the burden of demonstrating reasonableness is on the party requesting the attorneys' fees:

> [T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise "billing judgment" with respect to hours worked . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.

Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983). Second, the "party seeking an award of attorneys' fees bears the burden of establishing the reasonableness of the hourly rates requested." Valdivia v. Brown, 848 F. Supp. 2d 1141, 1143 (E.D. Cal. 2011).

In the Fee Motion, Dr. Leong submits declarations of lawyers from three law firms, Pachulski, Bertrand, and Shopoff. Notably, the legal fees for the firms that were not even counsel of record in this proceeding nearly total those of Pachulski. Given that the standards under § 330 are applicable to Dr. Leong's fee request, one would expect that the attorneys would seek to comply with the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees that are applied by this Court. This was not done. Per those Guidelines,

1. There should be categories with the maximum amount in each category not to exceed $20,000;

2. Case administration should not exceed 15% of the request;

3. There should be separate categories for motions and information about the time and compensation sought with respect to each motion;

4. There should be no grouping or clumping of time;

5. There should be an explanation for more than one professional at a hearing or meeting;

6. There should be an explanation where multiple attorneys are billing time for a conference; and

7. Airplane travel time should not be compensated.

The Fee Motion is woefully deficient in all of these areas. The Shopoff firm billed $91,890 and provided no categories for its work. The Bertrand firm billed $52,500 and likewise provided no categories for its work. The Pachulski firm billed $146,558.50 and provided only 2 categories for its work, "Bankruptcy Litigation", for which it billed $54,752.50, and "Case Administration", for which it billed $91,806. The Bankruptcy Litigation heading does not break down time spent on any motions and there is no explanation of what is supposed to be subsumed under this category. The Case Administration heading pertains to nearly 63% of the fee request (not 15%). There is likewise no explanation as to what is supposed to be subsumed under this heading, and the category makes little sense since time spent for researching motions and going to court on the contested hearings is included within these billings. Given that Dr. Leong bears the burden of proof with respect to the reasonableness of the fee request, his failure to provide a detailed breakdown of the fees should result in denial of all fees that are not properly explained.

In an effort to assist the Court in this regard, the Petitioners have prepared charts which are attached hereto as Exhibits A–I which attempt to breakdown the time spent by Dr. Leong's attorneys in various categories. In some instances, there was uncertainty given vague descriptions in the time entries and block billing. Categories were not assigned to all of the tasks that counsel performed, which is something that Dr. Leong's attorneys should have done. As will be seen from the charts, the time spent on tasks was grossly excessive. There was duplication of efforts; multiple attorneys at hearings;

multiple attorneys at meetings and conferences; attorneys with no apparent expertise in bankruptcy billing time for bankruptcy research on basic topics that Pachulski could have easily answered; gross discrepancies in reported time when attorneys from different firms attended the same meeting or phone call; lumping of time entries; billing for airplane travel time; and improper billing for time spent on issues collateral to this proceeding, such as interaction with the state court receiver. Given these failures, a reduction of fees in the range of 60% is warranted.

Petitioners have attempted to group the time spent by all 3 firms in various categories. It is clear that all 3 firms were involved substantively in drafting filings with this Court. The Shopoff and Bertrand firms were clearly not used simply to provide factual information about the background of the litigation history between the parties as the Fee Motion implies. It appears that 25.9 hours and $13,081.50 was billed in connection with reviewing and preparing an answer to the involuntary petition. See Exhibits B, D, and F. Given the simplistic nature of an involuntary petition, even taking into account the unusual facts of this case, this appears to be at least 3 times as much time as should reasonably have been spent on this task. It appears at least 13.7 hours was spent just drafting the answer, with all 3 firms involved in this process. The inefficiencies are even more apparent with respect to the motions. With respect to the Motion to Dismiss, 99.4 hours were spent on the matter at a cost of $56,372.50. See Exhibits B, D, and F. The motion was 5 pages long and was based on the fact that the alleged debtor had more than 12 creditors. This is simply not that complicated to warrant such an incredible amount of time. All 3 firms were involved in the drafting of the motion, all the firms spent significant time reviewing the opposition and preparing the reply firm. This likewise appears to be 3 times as much time as should reasonably have been spent on this task. The time spent on the summary judgment motion is staggering. It appears that 220.2 hours were spent at a cost of $124,242.50. See Exhibits B, D, and F. The 3 firms did the same tasks and spent an inordinate amount of time on the matter. The points and authorities are 15 pages long and make 2 arguments: the alleged partnership does not exist and the claims of the Petitioners are subject to a bona fide dispute.

The following are some of the problems associated with the billings provided by each of the firms.

Shopoff firm

1. Block billing. Nearly all of the time entries contain block billings, and there is no way for the Court to ascertain the time spent on discrete tasks. Courts have disallowed "lumping" and "block billing"—this Court should do the same. See, e.g., <u>In re Worldwide Direct, Inc.</u>, 316 B.R. 637, 643 (Bankr. D. Del. 2004 (disallowing all lumped entries); <u>In re Breeden</u>, 180 B.R. 802, 810 (Bankr. N.D. Va. 1995 (same); <u>In re Leonard Jed Co.</u>, 103 B.R. 706, 713 (Bankr. D. Md. 1989) (same). Lumped entries totaling $79,160.00 are identified on Exhibit F attached hereto.

2. Multiple attorneys billing for conferences. Nearly all the time entries include multiple attorneys billing time for conferences. The amount of time spent doing this cannot be ascertained due to the block billing.

3. Multiple attorneys billing for hearings and meetings. Lawyers from all 3 firms attended hearings either telephonically or in person. This was unnecessary and no explanation is proffered for their having done so.

4. Non-bankruptcy attorneys researching basic bankruptcy issues. Time was spent researching issues of bankruptcy law which undoubtedly could have been easily and efficiently answered by Pachulski.

5. Non-bankruptcy attorneys also appeared to have spent significant time writing briefs involving bankruptcy law issues. No information concerning their expertise in this area has been provided to the Court.

6. Discrepancies in time entries. There are a number of time entries involving calls with Pachulski lawyers where the time allegedly spent on the call as reflected by the Shopoff time entries is more than double the time recorded by Pachulski for the same conversation. In addition there are time entries for calls with Pachulski where Pachulski has no corresponding time entries. These discrepancies call into question the accuracy and veracity of all of the time entries by the Shopoff firm.

7. Billing for time not spent on this proceeding. There are a number of entries relating to services that did not involve defending the involuntary petition. For example, the

communications with the state court receiver to apprise her of what was transpiring should not be viewed as a cost of defending the action.

8. A failure to break out billings for discrete tasks.

Bertrand firm

1. Multiple attorneys billing for conferences. There are 37 entries involving multiple attorneys billing time for conferences.
2. Multiple attorneys billing for preparing and attending hearings and meetings. As noted above, this was unnecessary and no explanation is provided as to why this was done.
3. Non-bankruptcy attorneys researching basic bankruptcy issues.
4. Non-bankruptcy attorneys spent time writing briefs involving bankruptcy law issues.
5. A failure to break out billings for discrete tasks.

Pachulski firm

1. Multiple attorneys billing for conferences. There are 38 such entries.
2. Billing for travel time from Los Angeles.
3. Multiple attorneys billing for hearings and meetings.
4. A failure to break out billings for discrete tasks.

## IV. THE COST REQUEST SHOULD BE DENIED

Federal Rule of Bankruptcy Procedure 7054(b) provides that a court may allow costs to the prevailing party "except when a statute of the United States or [the Bankruptcy Rules] otherwise provides." FED. R. BANKR. P. 7054(b). This differs from Federal Rule of Civil Provedure 54(d) which provides that costs should be allowed.

The recovery of costs is limited by 28 U.S.C. § 1920, which states that:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services[.]

28 U.S.C. § 1920.

The Supreme Court has held that the discretion granted to the courts by Rule 54(d) "is not a power to evade this specific congressional command[;] [r]ather, it is solely a power to <u>decline</u> to tax, as costs, the items enumerated in § 1920. <u>Crawford Fitting Co. v. J. T. Gibbons, Inc.</u>, 482 U.S. 437, 442, 107 S. Ct. 2494, 2498 (1987) (emphasis added). As one court has noted: "the following items [] are not recoverable under Rule 54(d) and 28 U.S.C. § 1920: Airfare, parking, car rentals, hotels, meals, and similar related expenses incurred by defendants' attorneys; telephone charges; and postage and delivery expenses." <u>Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.</u>, 2003 WL 24162614 (D. Or. May 5, 2003) <u>vacated on other grounds</u>, 99 F. App'x 911 (Fed. Cir. 2004).

As discussed above, 28 U.S.C. § 1920 limits the type of expenses that may be taxed to the Petitioners to: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services[.]" 28 U.S.C. § 1920.

A total of $9,407.98 in costs is sought. The objectionable costs are set forth on Exhibit I. At least $8,845.38 of the costs are not allowable. The only costs that may be allowed are reproduction expenses totaling $562.60. Even these costs appear to be objectionable since the cost of reproducing copies of motions, pleadings, notices, and other routine case papers is not allowable. Civil Local Rule 54.3(d)(3). Given that Dr. Leong bears the burden of proof on this issue and has failed to provide information concerning the basis for the copying costs, this element of the costs should likewise be denied.

## V. CONCLUSION

WHEREFORE, the Petitioners respectfully request that this Court enter an order: (1) denying or significantly limiting the fees and costs as requested in the Application; and (2) granting such other and further relief as is just and proper.

Dated: April 3, 2017

GREENBERG TRAURIG, LLP

/s/ *Howard J. Steinberg*
HOWARD J. STEINBERG

Attorneys for Petitioning Creditors
Warren Havens and Polaris PNT PBC